353 So.2d 1137 (1977)
BOARD OF SUPERVISORS OF JACKSON COUNTY, Mississippi
v.
STANDARD OIL COMPANY, a Division of Chevron Oil Company.
No. 49385.
Supreme Court of Mississippi.
August 10, 1977.
Rehearing Denied August 31, 1977.
Karl Wiesenburg, Pascagoula, for appellant.
John G. Corlew, Pascagoula, Watkins & Eager, William F. Goodman, Jr., James L. Carroll, Jackson, for appellee.
Before INZER, SMITH and BROOM.
INZER, Presiding Justice, for the Court:
This is an appeal by the Board of Supervisors of Jackson County from a judgment of the Circuit Court of Jackson County reducing the ad valorem tax assessment of appellee, Standard Oil Company, for the year 1974. We reverse and remand.
Standard Oil Company filed objections before the Board of Supervisors of Jackson County to the assessment of its ad valorem tax for the year 1974. It was contended that the assessments against its property were not uniform and equal with the assessment of other property of like kind and character in Jackson County.
The Board of Supervisors heard the objections at the August 1974 meeting and entered an order overruling the same.
Standard appealed to the circuit court as to the personal property assessment and two items of real property. After a trial, the circuit court sustained a motion by Standard Oil for a peremptory instruction and entered judgment reducing the assessment and directing the Board of Supervisors to refund to Standard $590,732.03, representing the difference between the *1138 amount that Standard had paid under protest on its 1974 ad valorem taxes and the amount found due by virtue of the directed verdict. Hence, this appeal.
After considering the contention of the parties in this case, we are of the opinion that the controlling question to be decided is whether the trial court was in error in sustaining Standard's motion for a peremptory instruction.
Standard strongly contends that the trial court was correct in granting a peremptory instruction because the evidence in this case is undisputed that other industries in Jackson County were allowed a one-time depreciation of 50 percent of the actual cost of the personal property, were then assessed at 25 percent of the depreciated value, yielding a 12 1/2 percent ratio. Whereas, Standard was not allowed the one-time 50 percent depreciation on its personal property which resulted in its personal property being assessed for the year 1974 at a ratio of 25 percent. Consequently, it is argued that this case is controlled by our decision in American National Insurance Co. v. Board of Supervisors of Harrison County, 303 So.2d 457 (Miss. 1974), where we stated:
Section 112 of the Mississippi Constitution of 1890 provides in part as follows:
Taxation shall be uniform and equal throughout the state. Property shall be taxed in proportion to its value. Property shall be assessed for taxes under general laws, and by uniform rules, and in proportion to its value.
Of the several requirements of the Constitution, uniformity and equality are paramount. And in order to assure uniformity and equality so that every taxpayer shall bear his fair share of the tax burden, the Constitution provides that property shall be assessed by uniform rules and in proportion to its value. The equal protection clause of the Fourteenth Amendment to the Constitution of the United States also requires uniformity and equality in taxation. Knox, Attorney General v. Southern Paper Co., 143 Miss. 870, 108 So. 288 (1926). (303 So.2d at 459).
The county strongly controverts the assertion of Standard that the facts are undisputed and contends that it was an issue for the jury to decide and not for the court. The county contends that in deciding this question, all the evidence in its behalf and all reasonable inferences to be drawn therefrom must be taken as true. Although, Standard asserts it knows of no such rule, it has long been the rule in this state that when a peremptory instruction is requested on behalf of one of the parties, all evidence and reasonable inferences that may be drawn therefrom are to be taken as true against the party on whose behalf the charge is requested. In Ballenger v. Vicksburg Hardwood Co., 238 Miss. 654, 119 So.2d 778 (1960), we said:
It is well settled under our decisions that when a peremptory instruction is requested on behalf of either party, then all of the evidence and all reasonable inferences that may be drawn therefrom are to be taken as true against the party on whose behalf a peremptory charge is asked. Long v. Patterson, 198 Miss. 554, 22 So.2d 490; Allgood v. United Gas Corporation, 204 Miss. 94, 37 So.2d 12; Thomas v. Mississippi Products, Inc., 208 Miss. 506, 44 So.2d 556; Richardson v. Liddell, 222 Miss. 172, 75 So.2d 468; Mock v. Natchez Garden Club, 230 Miss. 377, 92 So.2d 562. See also Stricklin v. Harvey, 181 Miss. 606, 179 So. 345, and the cases therein cited. (238 Miss. at 657, 658, 119 So.2d at 779, 780.)
With this rule in mind we have carefully considered the facts as reflected by the abstract in this case. In this regard it should be pointed out that Standard did not file a supplemental abstract and its brief is keyed to the record rather than to the abstract. Although not required to do so, we have referred to the record in an attempt to be sure we have considered all the material facts. The record reflects that in 1963 Standard completed a major oil refinery in Jackson County. It was granted a ten year exemption from county ad valorem taxes by the Board of Supervisors for the tax years 1964 through 1973. As subsequent additions *1139 were made to the plant, additional exemptions were granted.
The assessed valuation of the original refinery on the county personal property roles was $18,862,000, the cost of the personal property being $72,374,900. As additions were added on during the ensuing years, Standard was paying only state ad valorem taxes, and the assessment of the personal property remained almost constant. In 1972, near the end of the original exemption period, representatives of Standard met with the tax assessor and members of the Board of Supervisors to ascertain the assessing policy of the county. It seemed that an understanding was reached at this meeting that a uniform tax policy was to be established for the year 1973. The assessment reduced Standard's assessment on the rendered valuation for personal property to a 12 1/2 percent ratio [cost depreciated by a one-time 50 percent depreciation, multiplied by a ratio of 25 percent, or equivalent to 12 1/2 percent of the original cost]. However, in preparing the 1974 tax roll, the tax assessor assessed Standard at the former ratio of 25 percent of the original cost.
Mr. E.M. Galloway, a member of the bar who was the tax assessor of Jackson County from October 1965 until January 1972, testified that when he became tax assessor he was aware that Dibble and Company had made a survey in order to appraise the real property in the county which was assessed at 25 percent of its value. During his tenure as assessor, personal property in the form of machinery and equipment was normally assessed on 100 percent of the cost minus a one-time 50 percent depreciation. The remaining 50 percent after depreciation would be multiplied times 25 percent resulting in an assessment equivalent to 12 1/2 percent of the actual cost. Mr. Galloway stated that this assessment was for the entire lifetime of machinery and equipment, not just one year. When he became assessor in 1965, Standard was already on the tax rolls and its assessment was not changed to reflect the foregoing assessment practice. James Reynolds, the present tax assessor, testified that when he went into office in 1972 he used the same figures Mr. Galloway had been using regarding the assessment of machinery and equipment of taxpayers other than Standard. Standard contends that the foregoing testimony of Galloway and Reynolds established that other taxpayers had been allowed a 50 percent depreciation which was denied to Standard when, in 1974, Standard was assessed on a basis that did not reflect the one-time 50 percent depreciation instituted during Mr. Galloway's administration. In other words, Standard maintains that Mr. Galloway never assessed it at the reduced rate since it was under its exemption, and Mr. Reynolds never made any changes in Mr. Galloway's assessments. Thus, Standard in 1974 was assessed at a rate established prior to the reduction instituted during Mr. Galloway's tenure. It further contends that this is borne out by the testimony of Harold Gorman and Ellis Allen. Mr. Gorman, while an employee of Cole-Layer-Trumble Company was employed by the City of Pascagoula in 1971 to make a revaluation of all property within the city and within the municipal separate school district which included property outside the city. Mr. Gorman testified that in making this revaluation, he procured the historic costs of the property, machinery and equipment from the plant itself.
Mr. Allen, who is a tax consultant, testified that he was employed by Standard to make a study of the assessment practice for the year 1974 of Jackson County to determine the effective ratio of assessment of personal property. In making this determination he used the appraisal made by Cole-Layer-Trumble in 1971 to determine the cost of machinery and equipment of certain taxpayers. Over the objection of the county, he was allowed to testify that from his study, the machinery and equipment of taxpayers in general was not actually assessed on the 1970 roll as high as 12 1/2 percent of the original cost. In fact, he said his study revealed that the median assessment ratio was 7.1 percent.
The principal witness for the county was W.J. Hunt, deputy tax assessor, who actually made up the personal property assessment *1140 roll for 1974. He described the procedure followed in making up the assessment. He said that each industry in the county was supplied with a form on which they were required to render under oath their personal property at 100 percent value. Using these renditions made by each taxpayer, the roll was made up by assessing the property of the taxpayer at 25 percent of the true value rendered. Mr. Hunt, at the request of counsel for the county, had prepared a list of about fifteen industries that he had assessed in the same manner as he said he assessed the property of Standard. He said the list did not include all industries. Mr. Hunt said he examined the roll and the renditions to determine whether a one-time depreciation was allowed to some industries and found that Mr. Galloway was not consistent in allowing the one-time 50 percent depreciation. Mr. Hunt said in making the 1974 personal property assessment, he did not make the assessment upon renditions made in prior years, but instead made up the roll upon the rendition made by the taxpayers for the year 1974.
Mr. James Reynolds, the tax assessor, testified that for the year 1974 they used a ratio of 25 percent of the original cost, without any depreciation. He said that when the taxpayer rendered their property at a 100 percent cost, they applied the 25 percent ratio, but that in some instances the taxpayer would apply the 25 percent ratio and state that it was 25 percent of the actual cost. In that event, it was assessed at the figure rendered by the taxpayers.
Standard introduced the deposition of one member of the Board of Supervisors of Jackson County who testified that he understood that the depreciation policy in Jackson County regarding industrial machinery and equipment was a one-time 50 percent depreciation to keep from having to change it every year. However, the minutes of the Board of Supervisors did not reflect the county had ever officially adopted such a policy.
In American National Insurance Co. v. Board of Supervisors, supra, it was undisputed that the tax assessor used a different method in assessing the improvements on the shopping center belonging to American National than was used in assessing the property of other taxpayers of like kind and character. Under those circumstances, we held that the Constitution's inhibition against inequality and the lack of uniformity in assessing property required us to hold that the improvements were not lawfully assessed. Of course, if as contended by Standard, the facts were undisputed in this case that the other owners of industrial machinery and equipment were allowed a one-time 50 percent depreciation of actual cost and then assessed at 25 percent of the depreciated value, while Standard was not allowed the 50 percent depreciation and was taxed at 25 percent of actual cost, the rule applied in American National would certainly apply in this case. However, as we view the testimony, there was an issue of fact as to whether the other taxpayers had been allowed the 50 percent depreciation for the year 1974 and Standard was not.
We have not overlooked Standard's contention that the testimony of Mr. Hunt, the deputy tax assessor, should be disregarded and that in some respects this testimony is in conflict with the testimony of the tax assessor. However, the weight and worth of all the testimony was for the jury to decide and not the court.
The trial judge in sustaining the motion for Standard for a peremptory instruction made the following statement:
BY THE COURT: First, let me say that from the testimony that has been presented, in my judgment I have no alternative except to sustain his motion. From the testimony that has been presented and the deposition I have read, it is really hard to determine what the taxing policy is, what yardstick is being used in this County, but in no stretch of the imagination can you say from the testimony, in my opinion, that there is a valid jury issue and can you say it goes beyond the 12.5.
So for the reasons that in my judgment there is a complete departure from the mandatory requirements of the Constitution *1141 of Mississippi and the United States Fourteenth Amendment, I feel that there is a radical departure from those requirements of uniformity and equality in the assessment of taxes, and I will sustain your motion for that reason.
This strong statement by the trial judge caused us to give this case more than the usual consideration, but with due regard to the opinion of the trial judge, we cannot escape the conclusion that taking the evidence on behalf of the county as true, together with all reasonable inferences to be drawn therefrom, the evidence was sufficient to create a jury issue.
Standard's cross appeal contending that the trial court should have directed the jury to fix its assessment at a ratio of 7.1 percent of the cost is without merit.
For the reasons stated, this cause is reversed and remanded on direct appeal and affirmed on cross appeal.
REVERSED AND REMANDED ON DIRECT APPEAL AND AFFIRMED ON CROSS APPEAL.
PATTERSON, C.J., SMITH, P.J., and ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.